| | |
|---|---|
| DESIMONE, AVILES, SHORTER & OXAMENDI, LLP, | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK |
| Plaintiff, | CIVIL ACTION NO. 07-7043(DLC) |
| vs. | |
| | **ANSWER, AFFIRMATIVE DEFENSES AND THIRD PARTY COMPLAINT** |
| YORK CLAIMS SERVICE, INC., | |
| Defendant/Third Party Plaintiff, | |
| vs. | |
| COLONIAL COOPERATIVE INSURANCE COMPANY and STEPHEN MUEHLBAUER, | |
| Third Party Defendants. | |

Defendant York Claims Service, Inc. ("York"), by way of Answer to the Complaint of plaintiff DeSimone, Aviles, Shorter & Oxamendi, LLP ("DASO"), states as follows:

### As to "Jurisdiction"

1.     York denies that this Court possesses subject matter jurisdiction over this matter.

### As to "Venue"

2.     York denies the allegations of paragraph 2.

### As to "Parties"

3.     York is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3.

4.     York denies that it is a foreign corporation and states that it is a New York corporation with its principal place of business located at 99 Cherry Hill Road, Parsippany, New Jersey 07054.

5.     York denies that it is a New Jersey corporation and states that it transacts business in New York.

6.     York admits the allegations of paragraph 6.

7.     York states that it provides claim services for insurance carriers, self-insureds, brokers and other intermediaries, and otherwise denies the allegations of paragraph 7.

8.     York admits the allegations of paragraph 8.

### As to "First Cause of Action"

9.     York repeats the responses to the foregoing paragraphs as if set forth at length herein.

10.     York admits that it provides claim services to various insurance companies, and further states that the assignment of counsel on matters for which York provides claims services is subject to York's agreements with the various insurance companies.

11.     York admits the allegations of paragraph 11.

12.     York denies the allegations of paragraph 12, and further states that, as York has subsequently ascertained, any alleged "agreement" between York and DASO was "obtained" by the wrongful, unauthorized conduct of York's then-employee, Stephen Muehlbauer, in combination with Colonial Cooperative Insurance Company ("CCIC"), and any such alleged "agreement" is not valid or binding on York.

13.     York denies the allegations of paragraph 13, and further refers to and incorporates herein by reference its response to the allegations of paragraph 12.

14.    York admits that DASO provided certain legal services for CCIC insureds, denies that it is responsible for any amounts for which DASO claims that payment is due in connection with such services and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 14.

15.    York denies that a valid agreement existed between York and DASO and admits that DASO submitted certain bills to York.

16.    York admits that it paid certain DASO bills and further states that, as York has subsequently ascertained, a valid agreement between York and DASO did not exist and, but for the wrongful conduct of Muehlbauer and CCIC, York should not and would not have paid certain DASO bills.

17.    York admits the allegations of paragraph 17.

18.    York admits that it has not made payments to DASO since in or about June 2006, and further states that York was not obligated to make any such payments.

19.    York denies the allegations of paragraph 19.

20.    York admits that DASO has sent certain bills to York, and further states that York has rejected any responsibility to pay DASO for such bills.

21.    York states that, due to their wrongful conduct, CCIC and Muehlbauer are responsible for paying any unpaid DASO bills, and otherwise deny the allegations of paragraph 21.

22.    York is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22.

23.    York denies the allegations of paragraph 23.

24.    York denies that DASO is entitled to the judgment demanded in paragraph 24, and otherwise denies the allegations of paragraph 24.

### As to "Second Cause of Action"

25.    York repeats the responses to the foregoing paragraphs as if set forth at length herein.

26.    York denies the allegations of paragraph 26.

27.    York denies that DASO is entitled to the judgment demanded in paragraph 27, and otherwise denies the allegations of paragraph 27.

### As to "Third Cause of Action"

28.    York repeats the responses to the foregoing paragraphs as if set forth at length herein.

29.    York denies the allegations of paragraph 29.

30.    York denies the allegations of paragraph 30.

31.    York denies that DASO is entitled to the judgment demanded in paragraph 31, and otherwise denies the allegations of paragraph 31.

32.    York denies that DASO is entitled to the judgment demanded in paragraph 32, and otherwise denies the allegations of paragraph 32.

WHEREFORE, York requests that the Court enter judgment dismissing plaintiff's Complaint in its entirety with prejudice, awarding York its attorneys' fees, costs and expenses in connection with this action and awarding York such and further relief as the Court deems equitable and appropriate.

### Affirmative Defenses

1.    DASO's Complaint fails to state a claim upon which relief can be granted.

2.    DASO's Complaint and all of the claims, rights, remedies and defenses that DASO asserts in this action are barred by the doctrines of laches, unclean hands, estoppel, in pari delicto and/or waiver.

3.    DASO has not suffered an ascertainable loss as a result of any act or omission of York.

4.    DASO's claims are barred or limited by DASO's own actionable and wrongful conduct.

5.    DASO's claims are barred because York did not breach any duty owed to DASO.

6.    DASO's claims are barred because no act, conduct or omission of York contributed to or caused the alleged harm.

7.    York complied with all applicable laws at all relevant times.

8.    At all relevant times, York acted in good faith and reasonably and without knowledge or intention to cause harm to DASO.

9.    Any harm to DASO is solely the result of DASO's own acts, conduct and/or omissions.

10.    Any harm to DASO is solely the result of the acts, conduct and/or omissions of third persons over whom York did not exercise control.

11.    Any harm to DASO is solely the result of the unauthorized acts, conduct and/or omissions of third persons for which York is not responsible.

12.    Any alleged "agreement" between York and DASO was "obtained" by the wrongful, unauthorized conduct of York's then-employee, Stephen Muehlbauer, in

combination with CCIC, and any such alleged "agreement" is not valid or binding on York.

13.    DASO's Complaint does not describe DASO's claims with sufficient particularity to enable York to determine what additional defenses it may assert in response to DASO's action.  York therefore reserves the right to assert any and all defenses that may relate to DASO's Complaint (and any amendments) once such claims' precise nature is ascertained through discovery.

### Third Party Complaint

York, by way of Third Party Complaint against third party defendants Colonial Cooperative Insurance Company ("CCIC") and Stephen Muehlbauer ("Mr. Muehlbauer"), alleges as follows:

**A.    The Parties**

1.    York is a New York corporation with its principal place of business located at 99 Cherry Hill Road, Parsippany, New Jersey 07054.

2.    CCIC is, upon information and belief, a New York cooperative insurance company organized and licensed as a corporation pursuant to §6603 of the New York Insurance Law, with its principal place of business located at 130 North Front Street, Kingston, New York 12402.

3.    Mr. Muehlbauer is an individual residing at 6 Burnham Place, Fair Lawn, New Jersey 07410.  Upon information and belief, Mr. Muehlbauer is CCIC's Vice President of Claims.

**B.    The relationship between York and CCIC and the Claims Service Agreement**

4.    York provides claim services for insurance carriers, self-insureds, brokers and other intermediaries.  CCIC is an insurance company that provides certain types of

insurance for medium to small sized businesses. In or about 1998-99, York began providing claim services to CCIC. The parties memorialized their relationship in a series of claims services agreements between them. Most recently, York and CCIC entered into a February 4, 2005 Claims Service Agreement ("Claims Service Agreement"). Pursuant to the Claims Service Agreement, York agreed to provide claim services for claims arising under CCIC insurance policies having inception and/or renewal dates between January 1, 2005 and December 31, 2007, and CCIC agreed to pay York for such services.

5.     The Claims Service Agreement provided that covered losses are CCIC's responsibility as provided for in the policies that it issues and that Allocated Loss Adjustment Expense ("ALAE"), which the Claims Service Agreement defined to include items such as attorneys' fees for claims in suit and for representation at hearings and pretrial conferences, are York's responsibility. On several occasions, York deferred increases in the pricing for its services based on verbal requests to do so by CCIC's President Kenneth P. Pangburn and Mr. Pangburn's verbal assurances to the effect that CCIC would afford York the opportunity to recoup any losses that York sustained as a result of having responsibility for paying ALAE with its own funds. The Claims Service Agreement also established pre-approved settlement limits, and stated that York must obtain CCIC's prior consent before paying or agreeing to pay any covered loss exceeding the authority limits; however, CCIC also controlled settlements within the pre-approved limits by controlling the establishment of reserve amounts, and could block settlements within approved limits by declining to authorize a reserve sufficient to pay the settlement. Upon information and belief, ALAE costs continued to mount for

York on claims where CCIC refused to settle above the pre-approved limit and where CCIC blocked reserve changes to allow settlements within pre-approved limits.

6.      The Claims Service Agreement stated that the claims files and related records comprised CCIC's property, and that in exchange for CCIC's right to obtain such files and records from York upon demand or the Claims Service Agreement's termination, CCIC agreed that it would lack the right to set off any sums claimed due from York against fees due York under the Claims Service Agreement.  The Claims Service Agreement further provided that such setoff may be obtained only to satisfy a final, non-appealable judgment.

7.      The Claims Service Agreement provided that CCIC may assume "exclusive management" of any claim at any time, and that exclusive management includes the right to select or replace counsel representing any insured in a litigated claim.  The Claims Service Agreement further stated that if CCIC assumed exclusive management of a claim, York would have no further responsibility with respect to such claim.  The Claims Service Agreement also provided CCIC with "the right, but not the duty, to associate" with York in the management and legal defense of any claim at any time, and stated that such right included the right to select defense counsel to associate in defending any insured in a litigated claim and that CCIC would bear the sole expense for association of defense counsel.

8.      As respects termination, the Claims Service Agreement stated:

Either party may, upon 90 days prior written notice to the other, convert this Agreement into a "runoff" Agreement, under which: a) the terminating party specifies the conversion cutoff date; b) [CCIC] will be responsible for payments to [York] only up to the conversion date; and c) [York] will thereafter have no obligation to handle claims having dates of

loss after the runoff conversion date. This Agreement will remain in full force and effect in all other respects.

9.     In or about 2004, York arranged for a law firm, Ira B. Pollack & Associates PLLC ("Pollack"), to represent CCIC insureds in litigated matters for which York was providing claim services under the Claims Service Agreement. The agreement between York and Pollack called for York to pre-pay Pollack on a fixed fee, per case basis. Pursuant to such agreement between York and Pollack, Pollack handled virtually all aspects of litigated matters for a fixed fee. This arrangement greatly benefited York because, among other things, it enabled York to anticipate and control its costs in connection with litigated claims for which it provided claim services to CCIC under the Claims Service Agreement.

**C.     Third party defendant Muehlbauer**

10.     On or about August 29, 1993, York hired third party defendant Muehlbauer as an Adjuster. Since in or about 2004, Mr. Muehlbauer served as the sole York adjuster for certain CCIC claims. During the course of his work at York on the CCIC claims, Mr. Muehlbauer developed a close relationship with CCIC's President, Kenneth Pangburn. At all times relevant hereto in connection with Mr. Muehlbauer's employment at York, Mr. Muehlbauer was employed by York at its Parsippany, New Jersey location. Upon information and belief, Mr. Muehlbauer presently works for CCIC out of his Fair Lawn, New Jersey house, which comprises a de facto corporate office of CCIC.

**D.     Third party defendants' conspiracy and other wrongful acts**

11.     Upon information and belief, plaintiff DASO typically only hires experienced attorneys to work at its firm, but DASO made an exception to hire the

daughter of a then-CCIC executive, John Masselli, in or about 2005. Upon information and belief, at the time that DASO hired Ms. Masselli, she was a recent admittee to the bar, not an attorney with considerable experience, and Mr. Muehlbauer began assigning matters to DASO at CCIC's direction and behest, thereby allowing CCIC to exercise exclusive management over CCIC claims without CCIC formally declaring that it was doing so.

12.     Further, in or about 2005-06, CCIC and Mr. Muehlbauer took further steps in conspiring to benefit CCIC and thereby damage York by allowing CCIC to exercise exclusive management over CCIC claims without CCIC formally declaring that it was doing so. Upon information and belief, CCIC co-opted Mr. Muehlbauer and caused him to advance CCIC's interests at the expense of York's interests through promises of employment with CCIC and other inducements.

13.     Upon information and belief, in furtherance of the conspiracy between CCIC and Mr. Muehlbauer, CCIC caused Mr. Muehlbauer to assign new matters to DASO as selected by CCIC and/or Mr. Muehlbauer at CCIC's direction and behest, thereby causing York to pay DASO on a time and expense basis notwithstanding York's arrangement with Pollack to handle such matters on a fixed fee basis.

14.     As part of the conspiracy, Mr. Muehlbauer selected DASO on new matters without obtaining York's proper authorization and consent. CCIC and Mr. Muehlbauer thereby improperly caused York to pay DASO substantial sums and improperly exposed York to claims for unpaid legal bills by DASO. In its Complaint in this action, DASO demands that York pay unpaid legal bills of approximately $115,000.00 for legal

services that DASO allegedly provided to CCIC insureds, plus statutory interest, costs and disbursements.

15.    Such selection of DASO benefited CCIC because it could assume de facto exclusive management over the claims, but not pay DASO's fees and other ALAE associated with defending the claims.    This selection of DASO also damaged York because, while CCIC was exercising de facto exclusive management over the claims, York was paying DASO on new matters notwithstanding York's fixed fee agreement with Pollack.    CCIC's and Mr. Muehlbauer's improper selection of DASO has subjected York to claims by DASO for unpaid legal bills by DASO for which CCIC and/or Mr. Muehlbauer are responsible due to CCIC's exercise of exclusive management over the claims.

16.    In or about August 2006, Mr. Muehlbauer resigned from York, and he thereafter joined CCIC as Vice President of Claims.    On or about August 24, 2006, CCIC terminated the Claims Service Agreement for CCIC's convenience and specified November 30, 2006 as the conversion cutoff date.

17.    Notwithstanding that, pursuant to the Claims Service Agreement, CCIC expressly agreed that it lacked the right to set off any sums claimed due from York against fees due York under the Claims Service Agreement, and that any such setoff only might be obtained to satisfy a final, non-appealable judgment, CCIC has failed and refused to pay York's fees for August, September, October and November 2006.    Upon information and belief, the fees due York under the Claims Service Agreement for August, September, October and November 2006 were $76,377.12, $78,287.52, $78,920.28 and $81,096.96, for a total of $314,681.88.    CCIC has stated to York that

CCIC does not intend to pay any further sums to York in connection with the Claims Service Agreement.

18.    In or about September 2006, York advised DASO that York would not be further involved in certain matters for which DASO had been providing legal services on CCIC insureds' behalf and that DASO would need to arrange with CCIC for payment of DASO's fees from that point onward.  York further advised DASO that CCIC had become responsible for the defense fees and costs associated with such matters pursuant to the agreement between York and CCIC, i.e., the Claims Service Agreement. Notwithstanding that York advised DASO thereof, DASO has continued to seek payment from York for services that it allegedly has continued to provide on CCIC insureds' behalf.

19.    In or about September 2006 and December 2006, due to CCIC's exercise of exclusive management over the claim files, York returned such files to CCIC pursuant to the Claims Service Agreement's exclusive management provision.  York advised CCIC that due to CCIC's exercise of exclusive management over the files, York lacked any further responsibility with respect to such claims as set forth in the Claims Service Agreement.

20.    Through their conspiracy and other intentional, wrongful acts and omissions, CCIC and Mr. Muehlbauer have improperly caused York to be subject to DASO's claims for unpaid legal bills.  CCIC and/or Mr. Muehlbauer are responsible for the payment of any of DASO's unpaid legal bills.  CCIC and Muehlbauer have further caused York to lose the benefits of (1) its agreement with Pollack, which had benefited York by enabling York to control the attorneys' fees and other costs that it incurred in

providing claim services under the Claims Services Agreement, and (2) the Claims Service Agreement, pursuant to which York would have received claim service fees from CCIC on an ongoing basis. CCIC and Mr. Muehlbauer also have caused York to incur attorneys' fees and other costs and expenses in the hundreds of thousands of dollars in connection with unwarranted payments to law firms, including but not limited to DASO, that CCIC and Mr. Muehlbauer, at CCIC's direction and behest and in furtherance of CCIC's interests rather than the interests of his then-employer, York, used instead of Pollack on new matters.

21.     Third party defendants' acts, conduct and omissions constitute wrongful and malicious conduct undertaken without legal justification and with the knowledge and intent that their actions would and will continue to cause substantial damage and injury to York, including but not limited to improperly causing York to be exposed to DASO's claims of unpaid legal bills.

**COUNT ONE**

**Common Law Conspiracy between CCIC and Mr. Muehlbauer**

22.     York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

23.     Third party defendants have knowingly participated in and conspired with one another in the violations of law complained of herein.  Third party defendants' conspiracies constitute clear and intentional violations of law.  Such activities and acts are improper and illegal and constitute identifiable violations of law as set forth herein. Third party defendants' conspiratorial activities and wrongful conduct in furtherance of their conspiracy have proximately caused damages to York in an amount to be determined at trial, including but not limited to indemnification for any judgment

rendered in DASO's favor. Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.

## COUNT TWO

### Intentional and Tortious Interference With Contracts
### by CCIC and Mr. Muehlbauer

24.     York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

25.     York's agreement with Pollack and the Claims Service Agreement between York and CCIC constitute valid and enforceable contracts. CCIC and Mr. Muehlbauer knew about York's agreement with Pollack and the Claims Service Agreement and the benefits that York derived from both contracts.

26.     CCIC and Mr. Muehlbauer, nevertheless, intentionally, wilfully, maliciously and without justification, interfered with York's agreement with Pollack and caused Pollack to be replaced by law firms favored by CCIC in litigated matters in which Pollack had represented CCIC insureds and/or selected law firms other than Pollack, including but not limited to DASO, to represent CCIC insureds in new matters.

27.     Mr. Muehlbauer also intentionally, wilfully, maliciously and without justification, interfered with York's agreement with CCIC, the Claims Service Agreement, and wrongfully induced and conspired with CCIC to terminate the Claims Service Agreement.

28.     CCIC's and Mr. Muehlbauer's intentional interference with York's agreement with Pollack and Muehlbauer's intentional interference with the Claims

Service Agreement have proximately caused damages to York in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor.  Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.

**COUNT THREE**

**Tortious Interference with Business Relations and Prospective Economic Advantage by CCIC and Mr. Muehlbauer**

29.    York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

30.    CCIC and Mr. Muehlbauer knew, or reasonably should have known, about York's agreement with Pollack and the economic advantages that York derived therefrom and reasonably expected to continue to derive therefrom in connection with providing claim services to CCIC pursuant to the Claims Service Agreement.

31.    CCIC and Mr. Muehlbauer have, without privilege, intentionally and maliciously interfered with the business relations between York and Pollack and York's prospective economic advantage.  York has suffered damages as a proximate result of third party defendants' interference with its business relations with Pollack and prospective economic advantage, including but not limited to indemnification for any judgment rendered in DASO's favor.  Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.  Third party defendants' acts, conduct and omissions constitute wrongful and

malicious conduct undertaken without legal justification and with the knowledge and intent that their actions would and will continue to cause substantial damage and injury to York.

32.    Mr. Muehlbauer knew, or reasonably should have known, about York's agreement with CCIC, the Claims Service Agreement, and the economic advantages that York derived therefrom and reasonably expected to continue to derive therefrom.

33.    Mr. Muehlbauer has, without privilege, intentionally and maliciously interfered with the business relations between York and CCIC and York's prospective economic advantage.    As a proximate result of Mr. Muehlbauer's interference with its business relations with CCIC and prospective economic advantage, York has suffered damages in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor.    Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.    Mr. Muehlbauer's acts, conduct and omissions constitute wrongful and malicious conduct undertaken without legal justification and with the knowledge and intent that his actions would and will continue to cause substantial damage and injury to York.

## COUNT FOUR

### Breach of Duty of Loyalty by Mr. Muehlbauer and Interference With Such Duty by CCIC

34.    York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

35.    Employees possess a common law duty of loyalty to their employer. As a York employee, Mr. Muehlbauer was bound by a duty of loyalty to, among other things, act in York's best interests and refrain from acting to York's detriment in furtherance of CCIC's interests or otherwise.

36.    Through his acts, conduct and omissions, Mr. Muehlbauer breached his common law duty of loyalty to York.

37.    Mr. Muehlbauer's wrongful conduct as described herein has proximately caused damages to York in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor. Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.

38.    Through its wrongful acts, conduct and omissions, including but not limited to conspiring with and aiding and abetting Mr. Muehlbauer's activities that furthered CCIC's interests at the expense of York's interests, CCIC interfered with Muehlbauer's duty of loyalty owed to York and wrongfully induced Muehlbauer to breach such duty.

39.    CCIC was not allowed to interfere with the duty of loyalty that Muehlbauer owed to York, and CCIC's intentional and malicious interference with such duty has proximately caused damages to York in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor. Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by

virtue of third party defendants' primary, actual and direct liability. CCIC's acts, conduct and omissions constitute wrongful and malicious conduct undertaken without legal justification and with the knowledge and intent that its actions would and will continue to cause substantial damage and injury to York.

**COUNT FIVE**

**Breach of Contract by CCIC**

40.     York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

41.     CCIC has breached the Claims Service Agreement by, among other things, failing and refusing to pay York its claim service fees for August, September, October and November 2006 when such fees became due and owing to York, and expressly stating that it will not pay York any further amounts due under the Claims Service Agreement, thereby exposing York to DASO's claims of unpaid legal bills. CCIC has done so notwithstanding that, pursuant to the Claims Service Agreement, CCIC expressly agreed that it lacked the right to set off any sums claimed due from York against fees due York under the Claims Service Agreement, and that any such setoff only might be obtained to satisfy a final, non-appealable judgment. CCIC also has stated to York that CCIC does not intend to pay any further sums to York in connection with the Claims Service Agreement.

42.     CCIC's breach of contract has proximately caused damages to York in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor. Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical,

vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.

## COUNT SIX

### Breach of the Implied Covenant of Good Faith and Fair Dealing by CCIC

43.    York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

44.    Under applicable law, the Claims Service Agreement contains an implied covenant of good faith and fair dealing.

45.    CCIC has breached the implied covenant of good faith and fair dealing in the Claims Service Agreement by, among other things, failing and refusing to pay York its claim service fees for August, September, October and November 2006 when such fees became due and owing to York, and expressly stating that it will not pay York any further amounts due under the Claims Service Agreement, thereby exposing York to DASO's claims of unpaid legal bills.

46.    As a result of this breach of the implied covenant of good faith and fair dealing, which is ongoing and continues to this day, York has been and will be damaged. CCIC's breach of the implied covenant of good faith and fair dealing has proximately caused damages to York in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor. Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.

## COUNT SEVEN

### Unjust Enrichment of CCIC

47.     York incorporates and realleges the foregoing paragraphs as if fully set forth herein.

48.     By its acts, conduct and omissions, including but not limited to its exercise of exclusive management over numerous claims without paying the attorneys' fees and other costs and expenses associated therewith, while conspiring with Mr. Muehlbauer to cause York to pay for such fees, costs and expenses, CCIC has sought to unjustly enrich itself, and has unjustly enriched itself, at York's expense, for which York should be reimbursed in an amount to be determined at trial, including but not limited to indemnification for any judgment rendered in DASO's favor.  Although denying liability to DASO, York alleges that if there is a finding of liability on its part, said liability would be merely technical, vicarious and imputed, by virtue of third party defendants' primary, actual and direct liability.

WHEREFORE, York requests judgment against CCIC and Mr. Muehlbauer, jointly and severally, in the amount of any damages assessed in favor of DASO against it, plus nominal, compensatory and punitive damages, interest, costs, expenses and fees, including but not limited to attorneys' fees incurred in connection with this action, and such other and further relief as the Court deems equitable and appropriate.

### Jury Demand

York demands a trial by jury of all issues so triable.

RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Attorneys for Defendant/Third Party Plaintiff
York Claims Service, Inc.


By:    *Edwin F. Chociey, Jr.*
      Gerald A. Liloia
    Edwin F. Chociey, Jr. (EC-6575)
      Neena Barua (NB-6090)

500 Fifth Avenue, Suite 4920
New York, NY 10110
(212) 302-6574

and

Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Dated: September 10, 2007

### Certificate of Service

I certify that on the date indicated herein I caused one copy of this Answer, Affirmative Defenses and Third Party Complaint to be sent by regular mail to plaintiff's counsel, Michael Aviles, Esq., DeSimone, Aviles, Shorter & Oxamendi, LLP, 145 Hudson Street, Suite 5C, New York, New York 10013.

        *Edwin F. Chociey, Jr.*
        Edwin F. Chociey, Jr.

Dated: September 10, 2007

3789678.1